IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM J. WHITSITT,

    Plaintiff,                                 No. CIV S-06-2076 FCD GGH PS

    vs.

VINOTHEQUE WINE CELLARS,         FINDINGS AND RECOMMENDATIONS
MARK TANNER,

    Defendants.

_____/

        Previously pending on this court's law and motion calendar for August 2, 2007, was defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and, pursuant to Fed. R. Civ. P. 12(f), defendants' motion to strike plaintiff's "Memorandum of Points and Authorities" filed September 19, 2006. Counsel Ernest Malaspina appeared at the hearing on behalf of defendants. Plaintiff, proceeding in pro se, did not appear[1] but timely filed an opposition.

        On August 7, 2007, this court directed plaintiff to demonstrate exhaustion of administrative remedies. Plaintiff timely although inadequately responded; defendants filed a

---

[1] Plaintiff telephoned this court's courtroom deputy the day before the hearing and explained that he had a new job and could not take the time or pay deduction to attend the hearing.

1

reply setting forth the requisite additional information demonstrating exhaustion.  For the reasons that follow, it is recommended that defendant Mark Tanner be dismissed from plaintiff's first claim under the ADEA (age discrimination in hiring); plaintiff's second claim, retaliation for engaging in a protected activity, should be dismissed in its entirety; plaintiff's third claim, intentional infliction of emotional distress, should proceed against both defendants.

I. <u>BACKGROUND</u>

On January 11, 2007, this court granted plaintiff's application to proceed in forma pauperis and directed service of process by the U.S. Marshal.  Defendants signed waivers of service through mutual counsel on April 18, 2007, filed with the court on May 30, 2007.  On June 1, 2007, defendants filed the instant motions.

The complaint alleges that in March 2006 plaintiff was interviewed but not hired for two positions advertised by defendant Vinotheque Wine Cellars.  With the assistance of Worknet, plaintiff had filed an employment application with Vinotheque to fill the position of Finish Cabinet Maker (requiring a minimum of two years experience) or Cutter and Cabinet Worker (requiring a minimum of six months experience).  Plaintiff then had six years of experience.  On Friday, March 10, 2006, Vinotheque's hiring manager, defendant Mark Tanner, called plaintiff and they agreed upon an interview date of March 17.  Plaintiff and Tanner were acquainted because they had previously worked together at Romic Environmental Technologies, where Tanner was in charge of employee records.  Plaintiff states that Tanner knew plaintiff was over 40 years of age.  On March 17, Tanner interviewed plaintiff for a period of 25 minutes, took him on a 20-minute tour of the cabinet-making facilities, and spoke with him for another 15 minutes.  In the closing conversation, Tanner asked plaintiff his age, to which plaintiff responded "51."  Tanner purportedly stated, "If you do not hear from me within the next two weeks then I will have hired a younger person than you," then quickly stated, "I mean another person."

Not hearing from defendants, plaintiff sent them three letters dated March 29, March 31, and April 5, 2006, respectively.  Each is called a "Discrimination in Hiring Practices

Notice," and designated, respectively, "First Notice," "Second Notice" and "Third Notice."[2] In these letters, plaintiff makes the assumption a younger person was hired, and asks defendants to hire plaintiff or face legal action. In a responsive letter dated March 31, 2006, defendants' counsel wrote in pertinent part:[3]

> I am in receipt of your letters dated March 29, 2006 and March 31, 2006. To be quite direct, your allegations are baseless. . . .Vinotheque denies any wrongdoing whatsoever in connection with your interview for employment or any other component of its hiring process.

Plaintiff maintains that at least one job remained open at Vinotheque until June 19, 2006.[4]

The complaint makes the following claims against both defendants: (1) discrimination in hiring in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; (2) retaliation violation of the ADEA; and (3) intentional infliction of emotional distress, a state law claim. Plaintiff seeks statutory, compensatory and punitive damages.

On June 1, 2007, defendants filed the instant motions.

II. <u>MOTION TO STRIKE</u>

Defendants move to strike plaintiff's "Memorandum of Points and Authorities in Support of Complaint for ADEA Discrimination in Hiring." The motion is made pursuant to

---

[2] These letters, designated Exhibits A, B, and C, are set forth in an "Index of Exhibits" attached to plaintiff's opposition to the instant motion. Because these exhibits were referenced, but omitted from, plaintiff's complaint, the court construes them to be part of the complaint. Fed. R. Civ. P. 10(c).

[3] This letter is set forth as Exhibit D to plaintiff's "Index of Exhibits," is referenced in the complaint (although mistakenly as "Exhibit C" (Complaint at p. 4)), and is therefore construed as part of the complaint.

[4] Plaintiff relies on his Exhibit F, which is not sufficiently informative to prove his point. The undated exhibit advertises Vinotheque's "Finish Cabinetry" position; the explanation plaintiff has attached to the exhibit states that "This is Proof that the Name[d] Employer had the same Job Openings Posted with CAL-Jobs EDD on May 21st 2006. In fact it was still posted as of June 19th, 2006."

1  Fed. R. Civ. P. 12(f), which authorizes the court at any time to strike "from any pleading any
2  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
3        The "Memorandum" at issue was filed as an "attachment" to plaintiff's
4  "complaint" and contained plaintiff's legal arguments in support of the factual contentions set
5  forth in the "complaint." The court properly construed the filings together, consistent with the
6  policy of liberally construing pro se matters. See e.g., Haines v. Kerner, 404 U.S. 519, 520-21,
7  92 S. Ct. 594, 595-96 (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir.
8  1988). Moreover, defendants' motion is untimely. Motions to strike must be made "within 20
9  days after the service of the pleading upon the party." Fed. R. Civ. P. 12(f). The Memorandum
10 was served on defendants on April 5, 2007, by the U.S. Marshal, as part of the complaint.
11 Defendants' motion to strike was filed nearly two months later. More importantly, the substance
12 of the memorandum is repeated in plaintiff's opposition to the instant motion; thus, its presence
13 in the record does not alter resolution of this matter.
14       Accordingly, defendants' motion to strike is denied.
15 III. <u>MOTION TO DISMISS</u>
16   A. <u>Legal Standards</u>
17       A complaint should not be dismissed under Rule 12(b)(6) unless it appears
18 beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle
19 him to relief. NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803 (1994); Cervantes
20 v. City of San Diego, 5 F.3d 1273, 1274-75 (9th Cir. 1993). Dismissal may be based either on
21 the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable
22 legal theories. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).
23       The complaint's factual allegations are accepted as true. Church of Scientology of
24 California v. Flynn, 744 F.2d 694 (9th Cir.1984). The court construes the pleading in the light
25 most favorable to plaintiff and resolves all doubts in plaintiff's favor. Parks School of Business,
26 Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995). General allegations are presumed to

include specific facts necessary to support the claim. NOW, 510 U.S. at 256, 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 111 S. Ct. 2166 (1991). "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. See Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir.2000) (en banc); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Discussion

1. First Claim: Age Discrimination in Hiring under the ADEA

Plaintiff asserts he was qualified for both positions advertised by Vinotheque and was not hired for either because of his age. As found by this court pursuant to its January 11, 2007 order granting plaintiff's application to proceed in forma pauperis, plaintiff has established a prima facie case of discrimination in hiring under the Age Discrimination and Employment Act

(ADEA), 29 U.S.C. § 621 et seq. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), and thus "the ADEA stands as a prohibition against unjustified maximum age limits for hiring," 14A C.J.S. Civil Rights § 272 (2007).[5]

Defendants do not contest the court's finding that plaintiff has pled a prima facie case of ADEA discrimination in hiring against Vinotheque. They do, however, contend that plaintiff has failed to state a claim against defendant Tanner under the doctrine of managerial privilege.

The Ninth Circuit has held that individual employees, including supervisory employees, cannot be held liable for damages under the ADEA or Title VII. Miller v. Maxwell's International, Inc., 991 F.2d 583, 587-588 (9th Cir. 1993). Although both of these acts define "employer" to include "any agent" of the employer (29 U.S.C. §§ 630(b), 203(d), 42 U.S.C. § 2000e(b) ), the Ninth Circuit has construed these provisions "to incorporate respondeat superior liability into the statute[s]" rather than impose "employer liability" on the employee. Id., at 587, quoting Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982). Thus, "civil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee." Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998). Thus, only Vinotheque, the prospective employer, may be held liable under the ADEA.

\\\\\

---

[5] "To establish a prima facie case of age discrimination through circumstantial evidence, the plaintiff must show that he was: (1) a member of a protected class [age 40 or older]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir.1996).

Accordingly, defendants' motion to dismiss plaintiff's first cause of action against defendant Tanner should be granted. Plaintiff's age discrimination claim should proceed against defendant Vinotheque only.

2. Second Claim: Retaliation under the ADEA

Plaintiff contends defendants refused to hire him for the Cabinet Finisher position that remained open until June 19, 2006 (see n. 4, supra, and related text) in retaliation for plaintiff's complaints he was rejected for the Material Cutter position as set forth in his "Notices of Discrimination" sent March 29, March 31, and April 2, 2006. Defendants contend plaintiff cannot demonstrate any causal link between his "Notices" and defendants' decision not to hire him.

For the reasons discussed above precluding individual liability under the ADEA, Tanner should be dismissed from this claim. Accordingly, this analysis concerns only Vinotheque.

"To establish a claim of retaliation [under the ADEA], a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." Poland v. Chertoff, 494 F.3d 1174, 1179-1180 (9th Cir. 2007) (fn omitted), citing Villiarimo v. Aloha Islands Air, Inc., 281 F.3d 1054, 1064 (9th Cir.2002) (Title VII analysis applies to ADEA cases). "An adverse employment action is 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" Id. at 1180, quoting Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (internal quotation marks omitted therein). "At the prima facie stage of a retaliation case, '[t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Id. at 1181, n. 3, quoting Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir.2001) (internal quotation marks omitted therein).

The court finds that plaintiff has failed to demonstrate any relationship between Vinotheque's receipt of plaintiff's "Notices of Discrimination" and Vinotheque's decision not to hire plaintiff. Even assuming that plaintiff's "Notices" constituted a "protected activity,"[6] their content does not support plaintiff's representation they were written to object to defendants filling the Material Cutter position and caused defendants to deny plaintiff the Cabinet Finisher position. The "Notices" do not distinguish between these positions or convey knowledge that one position remained open. Rather, they complain generally of plaintiff not being hired "because of my age," opine prospectively that defendants "will hire a considerably younger worker," and implore defendants generally to hire plaintiff in order to avoid legal consequences ("I . . . ask you as a matter of Civil Rights and Federal ADEA, and State FEHA, that you hire me and thus do what is right"). Thus, plaintiff's argument he was denied the Cabinet Finisher position after complaining he was denied the Material Cutter position appears retroactively crafted for purposes of this action. This may explain the tentative nature of this argument in the complaint (Complaint at p. 5 (emphasis added)):

> I must Claim *probable Retaliation* for Not Hiring me for either Job I applied for. The Defendant employer Vinotheque still has one of the Jobs I applied for open. See: (Exhibit F.). Thus, Vinotheque has committed a form of Retaliation against me because I filed Discrimination claim [plaintiff's "Notices"] with them. I qualified to do both jobs I applied for with Linda a[t] the Worknet Stockton office. See: (Exhibit E.). The Exhibits do show proof of a *Possibility of Retaliation*. I am going to include this Charge of Intent on Retaliation. Mark Tanner Supervisor and Interviewer for the Employer Vinotheque, did act with full Wanton, Deliberate Intent on Retaliation, That is why he did Not offer me Cabinet Finisher Job opening. He did this because I faxed and Mailed his Notice of Discrimination in not being offered the Material Cutter Job Opening.

The facts of the complaint do not demonstrate any relationship between plaintiff's "Notices" and Vinotheque's decision not to hire plaintiff. Although Tanner's alleged remark provided that no news for a period of two weeks meant plaintiff would not be hired, the delay could have been due to defendant's prolonged and legally defensible consideration of the

---

[6] A "protected activity" includes opposing or making a charge of an unlawful employment practice. See 42 U.S.C. § 2000e-3.

candidates and their suitability for the positions.  At the time plaintiff sent his first "Notice," defendant had not expressly rejected plaintiff.  After receipt of plaintiff's second "Notice," defendant's counsel responded only that plaintiff's allegations were "baseless" and defendants denied "any wrongdoing whatsoever in connection with your interview for employment or any other component of its hiring process;" again, defendant did not directly reject plaintiff for employment.  It is reasonable to conclude that by the time plaintiff sent his third "Notice," defendant implicitly rejected plaintiff based on his character as presented in his written communications rather than plaintiff's charge of age discrimination, that is, the tone of the "Notices" resolved any doubt in defendants' substantive decision-making.  On the other hand, even if defendant refused employment to plaintiff due to his age – even if plaintiff can prove his age discrimination claim – defendant's decision was likely made at plaintiff's interview and not as a retaliatory response to plaintiff's "Notices."  It is therefore more reasonable than not to conclude – and plaintiff has not demonstrated to the contrary – that plaintiff's charges of age discrimination as set forth in his "Notices" were "completely unrelated" to defendant's decision not to hire plaintiff.

Finally, plaintiff's "notice" has a bootstrappish quality to it.  A claim for retaliation should not be able to be manufactured by the person who alleges to be the victim of the retaliation.  If such were not the case, before any job interview, one could send a notice to an employer that it better not discriminate, and if that person sending the notice does not get the job – presto, it is instant *prima facie* retaliation.  That, in essence, is what plaintiff has done.

Thus, the court finds that plaintiff has failed to make a prima facie showing of retaliatory conduct by defendant under the ADEA.

Accordingly, defendants' motion to dismiss plaintiff's second cause of action based on retaliation should be granted as to both defendants.

\\\\\

\\\\\

### 3. Third Claim: Intentional Infliction of Emotional Distress

Defendants contend plaintiff's third, state law, claim, for intentional infliction of emotional distress, should be dismissed because plaintiff has not pled sufficiently "outrageous" conduct to support the claim. Defendants also contend dismissal is warranted as to Tanner on the ground that an employee cannot generally be sued for personnel actions.

In cases conferring federal subject matter jurisdiction, the court may exercise pendant jurisdiction over related state claims. 28 U.S.C. § 1367; United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966).

As a threshold matter, defendants contend Tanner should be dismissed from this claim based on the "co-employee privilege" set forth in Sheppard v. Freeman, 67 Cal. App. 4th 339, 347 (4th Dist.1998), precluding suit against coworkers for "personnel actions" absent statutory authorization. In Sheppard, the plaintiff, a former airline pilot, sued former coworkers on the ground they had conspired maliciously to falsify his performance record which in turn resulted in his discharge. In deference to the broader concern that employees should feel free to voice their concerns about coworkers, the Sheppard court held, in a two-to-one decision, that "an employee or former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions," even if the conduct was malicious. Id. The instant case is distinguishable. Assuming hiring decisions are included in "conduct relating to personnel actions,"[7] Tanner was not plaintiff's "co-employee" at the time of the challenged conduct. While a "former coworker" and a "potential coworker," Tanner was in supervisory and decision-making role. Moreover, the acts complained of include statements allegedly made by Tanner directly to plaintiff. The policy considerations underlying Sheppard, fostering candid disclosures by employees about the job performance of their peers, do not apply here. Further, Sheppard has

---

[7] The Sheppard court provided the following examples of "conduct relating to personnel actions:" "termination, demotion, discipline, transfers, compensation setting, work assignments, and/or performance appraisals." 67 Cal. App. 4th at 343.

had little precedential impact, and at least one judge in this district has rejected it.[8]  Accordingly, the court rejects defendants' contention Tanner should be dismissed based upon the Sheppard "co-employee" privilege.

The court next considers defendants' argument their conduct was not sufficiently outrageous to support a prima facie claim for intentional infliction of emotional distress.  In California, "'[t]he elements of a prima facie case for the tort of intentional infliction of emotional distress were summarized in Cervantez v. J.C. Penney Co. (1979) 24 Cal.3d 579, 593 [citation], as follows: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard [for] the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."' (Davidson v. City of Westminster (1982) 32 Cal.3d 197, 209.)" Miller v. National Broadcasting Co., 187 Cal. App. 3d 1463, 1487 (2nd Dist. 1986).

"[I]ntentional torts will support an award of damages for emotional distress alone, but only in cases involving extreme and outrageous intentional invasions of one's mental and emotional tranquility. . . .[i]t is the outrageous conduct that serves to insure that the plaintiff experienced serious mental suffering and convinces the courts of the validity of the claim." Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 927 (1980) (citations and internal quotations omitted) (permitting action for negligent infliction of emotional distress; applying foreseeability of injury requirement and noting need for reasonable limitations).  However, "[b]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition

---

[8] See Scott v. Solano County, 459 F. Supp. 2d 959, 971-972 (E.D. Cal. 2006) (Karlton, J.); see also Graw v. L.A. County Metro. Transp. Auth., 52 F.Supp. 2d 1152 (C.D.Cal 1999) (Pregerson, J.); and dissent in Sheppard, 67 Cal. App. 4th at 350-359 (Kremer, P.J.) (privilege should not include intentional torts).

1   that the acts are likely to result in illness through mental distress." Agarwal v. Johnson, 25
2   Cal.3d 932, 946 (1979), disapproved on other grounds, White v. ltramar, Inc.,21 Ca. 4th 563
3   (1999), citing Prosser, Law of Torts (4th ed. 1971) pp. 57-58.

   Although inartfully presented, plaintiff appears to rest his emotional distress claim both on his rejection by Vinotheque and Tanner's alleged statement, "If you do not hear from me within the next two weeks then I will have hired a younger person than you," which plaintiff concedes he initially took as a joke. The complaint describes plaintiff's ensuing depression, sense of worthlessness, and fears for the future.[9]

   Not every discrimination case can be equated with an intentional causing of emotional distress – conduct that must truly be outrageous and not just incorrect. There is a danger in escalating every claim into one of the highest magnitude. The court has some doubt about the level of conduct alleged here with respect to its outrageousness. On the other hand, it would appear improper to dismiss such a claim at the motion to dismiss level. If proven, the statement may meet the criteria for "outrageousness" set forth in Agarwal, 25 Cal.3d at 946, specifically, that Tanner, based on his unique relationship with plaintiff, both in prior employment and in his hiring capacity for Vinotheque, (1) abused both his relationship and position to damage plaintiff's interest, (2) knew plaintiff's sensitivity and vulnerability to a hiring decision based on age (or threat of such action), and (3) acted intentionally or unreasonably with the recognition that his acts were likely to result in plaintiff's mental distress.[10] Were it not for

---

[9] The complaint provides, for example, that plaintiff's rejection by defendants conveyed the message, "Go off and die somewhere but Not here." Complaint, at p. 6. Plaintiff states in part that, "My person is Hurt Injured and Damaged. My pride has been destroyed. My heart has been broken. My spirit has been shaken, my will to live tested. . . . Does this mean over 50, I don't have the right to work anymore? That hurt burns in my heart and it runs through my veins. It has caused me irreparable Harm. My Emotions have been utterly destroyed with feelings of being worthless. I have trouble sleeping at night and I have nightmares of being stranded in life with no means of supporting my family and myself. . . ." Id.

[10] In support of this possibility, plaintiff asks, "Was this an accidental statement [?] No, I remember Mark Tanner from Romic, he was never afraid to say what ever was on his mind, and he meant what he said. He intended to Inflict Emotional Distress and to truly injure and Damage

Tanner's past knowledge of plaintiff, his alleged statement might be viewed more objectively, i.e., as a reckless disregard for legal principles but leaving open the possibility that plaintiff could still be hired. But that is not the scenario before us. Tanner's prior relationship with plaintiff and his current role as Vinotheque's hiring manager lower the threshold for finding his conduct "outrageous," and therefore lowers the threshold for Vinotheque. See, e.g., Lisa M. v. Henry Mayo Newhall Memorial Hospital, 12 Cal. 4th 291, 298 (1995) ("an employer is vicariously liable for the torts of its employees committed within the scope of the employment"); Cal. Civ. Code § 2338 et seq. (respondeat superior).

Accordingly, plaintiff's third claim, for intentional infliction of emotional distress, shall proceed against both defendants.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss should be granted in part and denied in part. Plaintiff's first claim, age discrimination in hiring in violation of the ADEA, should proceed against Vinotheque only; defendant Tanner should be dismissed. Plaintiff's second claim, based on a theory of retaliation in violation of the ADEA, should be dismissed as to both defendants. Plaintiff's third claim, intentional infliction of emotional distress pursuant to state law, should proceed against both defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate

\\\\\

\\\\\

---

my Person." Memorandum, at 10-11.

13

Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

DATED: 11/19/07

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

NOW6:Whitsitt2076.f&r