IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM J. WHITSITT,

    Plaintiff,                      No. CIV S-06-2076 FCD GGH PS

    vs.

VINOTHEQUE WINE CELLARS,      ORDER AND FINDINGS AND
                                                          RECOMMENDATIONS
MARK TANNER,

    Defendants.

_____/

        Previously pending on this court's law and motion calendar for September 25, 2008, was defendants' motion for summary judgment, filed August 25, 2008. Counsel Ernest Malaspina appeared at the hearing on behalf of defendants. Plaintiff appeared in pro se, and filed an opposition which the court will also construe as a motion to withdraw admissions.[1]

        For the reasons that follow, plaintiff's motion to withdraw his admissions is granted in part. It is recommended that defendants' motion for summary judgment be granted in part and denied in part.

\\\\\

---

[1] In his opposition, plaintiff makes a clear request to withdraw his admissions. (Oppo. at 8:18-20.)

1

I.  BACKGROUND

The verified complaint alleges that in March 2006 plaintiff was interviewed but not hired for two positions advertised by defendant Vinotheque Wine Cellars.  With the assistance of Worknet, plaintiff had filed an employment application with Vinotheque to fill the position of Finish Cabinet Maker (requiring a minimum of two years experience) or Cutter and Cabinet Worker (requiring a minimum of six months experience).  Plaintiff then had six years of experience.  On Friday, March 10, 2006, Vinotheque's hiring manager, defendant Mark Tanner, called plaintiff and they agreed upon an interview date of March 17.  Plaintiff and Tanner were acquainted because they had previously worked together at Romic Environmental Technologies, where Tanner was in charge of employee records.  Plaintiff states that Tanner knew plaintiff was over 40 years of age.  On March 17, Tanner interviewed plaintiff for a period of 25 minutes, took him on a 20-minute tour of the cabinet-making facilities, and spoke with him for another 15 minutes.  In the closing conversation, Tanner asked plaintiff his age, to which plaintiff responded "51."  Tanner purportedly stated, "If you do not hear from me within the next two weeks then I will have hired a younger person than you," then quickly stated, "I mean another person."

The complaint alleges that when plaintiff did not hear from Tanner, he telephoned Vinotheque and was told the positions had been filled.  Plaintiff then sent defendants three letters dated March 29, March 31, and April 5, 2006, respectively.  In these letters, plaintiff makes the assumption that a younger person was hired, and asks defendants to hire plaintiff or face legal action.  In a responsive letter dated March 31, 2006, defendants' counsel wrote in pertinent part:

> I am in receipt of your letters dated March 29, 2006 and March 31, 2006.  To be quite direct, your allegations are baseless. . . .Vinotheque denies any wrongdoing whatsoever in connection with your interview for employment or any other component of its hiring process.

Plaintiff maintains that at least one job remained open at Vinotheque until June 19, 2006.

\\\\\

The complaint makes the following claims against both defendants: (1) discrimination in hiring in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; (2) retaliation violation of the ADEA; and (3) intentional infliction of emotional distress, a state law claim. Plaintiff seeks statutory, compensatory and punitive damages.

On January 16, 2008, the district judge adopted the undersigned's findings and recommendations and dismissed defendant Mark Tanner from plaintiff's first claim under the ADEA (age discrimination in hiring); dismissed plaintiff's second claim of retaliation for engaging in a protected activity, in its entirety; and permitted plaintiff's third claim, intentional infliction of emotional distress, to proceed against both defendants.

On August 25, 2008, defendants filed the instant motion for summary judgment, seeking judgment based on requests for admissions to which plaintiff did not respond, and alternatively based on the merits. For the reasons which follow, plaintiff's motion to withdraw admissions will be granted in part. The court finds that only five requests for admissions will be deemed admitted. Taking those five admissions into consideration for purposes of the motion on the merits, the court finds that summary judgment should be denied on plaintiff's ADEA claim in regard to both positions for which plaintiff applied. Summary judgment should be granted on plaintiff's claim for intentional infliction of emotional distress.

II. SUMMARY JUDGMENT STANDARDS UNDER RULE 56

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee note to 1963 amendment). Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c). Disputed facts must be material (affecting the outcome of the suit under the governing law), and genuine (supported by evidence permitting a reasonable jury

3

to return a favorable verdict).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Rule 56(c)).

The moving party without the burden of proof at trial may rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. (citations omitted.)  That party need only point to the absence of a genuine material factual issue, and is not required to produce evidence negating the opponent's claim.  Id. at 323-24; Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885, 110 S. Ct. 3177, 3187 (1990).

When the moving party meets its responsibility, the burden shifts to the opposing party.  Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356.  The opposing party then must submit "significant probative evidence" on each element of his claims on which he bears the burden at trial.[2]  Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994).  Unverified denials in pleadings are insufficient.  Neither can conclusory statements defeat a properly supported motion.  Scott v. Rosenberg, 702 F.2d 1263, 1271-72 (9th Cir. 1983).  Rather, specific facts in the form of affidavits or admissible discovery material must be submitted.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n.11.

The opposing party need not conclusively establish any fact.  To demonstrate a genuine dispute, however, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead

---

[2] "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 322.

4

a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted). In other words, the evidence must demonstrate that a trial is required to resolve the parties' differing versions of the truth. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

The court believes the evidence of the opposing party, Anderson, 477 U.S. at 255, 106 S. Ct. at 2513, and draws all reasonable inferences in its favor, Matsushita, 475 U.S. at 587, 106 S. Ct. at1356. Nevertheless, inferences are not drawn out of the air, and the opposing party must produce a factual predicate from which to draw an inference. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

III. DISCUSSION

    A. Motion to Withdraw Admissions

The primary basis for defendants' summary judgment motion is plaintiff's failure to respond to their requests for admissions ("RFA"), and consequent "deemed admission" of those requests. Defendants assert that their counsel, Mr. Malaspina, personally served plaintiff with these requests at the conclusion of plaintiff's deposition, on July 15, 2008. Defendants claim that they specifically included a paragraph directing plaintiff to respond by August 14, 2008, and warned him that failure to respond would result in matters being deemed admitted. Malaspina Decl., ¶ 3, Ex. B. Defendants point to multiple actions previously filed by plaintiff, and specifically one where plaintiff was served with requests for admissions and did not respond. They were deemed admitted and defendants obtained summary judgment against him. Whitsitt v. Club Resource Group, 06-CV-2075 MCE KJM PS; RJN, Ex. J. Plaintiff claims that he does not recall defendants' counsel handing him an envelope after his deposition. According to plaintiff, when he questioned Mr. Malaspina about it, the attorney admitted that he did not tell plaintiff what they were, and just said it was "something for you to look at." Plaintiff claims he has looked everywhere for this envelope and could not find it.

\\\\\

A party may properly rely on requests for admissions which may be deemed admitted when no response has been made. Fed. R. Civ. P. 36. See also Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007). Plaintiff attempted to withdraw these admissions by filing a motion for the relief afforded under Federal Rule of Civil Procedure 36(b) on September 11, 2008; however, it was vacated from the calendar as improperly noticed under E. D. Local Rule 37-251(a). Nevertheless, plaintiff's opposition to the motion for summary judgment will also be construed to include a motion under Rule 36(b) as plaintiff has made a clear request to withdraw his admissions. Subdivision (b) provides:

> **(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36(b).

Plaintiff's motion to withdraw his admissions will be granted only in part. With respect to the first prong, most of the requests do not attempt to establish facts material to the action, but appear to be a trap, i.e. they simply seek a default of the action in the event that plaintiff did not timely answer. For example, request number 26 states, "[a]dmit that you had no good faith basis for bringing a claim of Age Discrimination against Vinotheque Wine Cellars." (Defs.' Ex. B.) Request number 6 similarly seeks a case dispositive admission: "[a]dmit that Vinotheque Wine Cellars had a legitimate, non-discriminatory reason for refusing to hire you." (Defs.' Ex. B.) Plaintiff will not be deemed to have admitted these types of admissions which do not serve the merits of the case, but which mainly require plaintiff to make conclusive legal admissions such that he basically concedes his case to defendants. Requests for admissions are designed to narrow the factual disputes, and when they are used to obtain general, case

dispositive conclusions they become problematic.  Refusing to permit plaintiff to withdraw his admissions as to factual matters does not prejudice plaintiff in the way that conclusory admissions would prejudice him.

Moreover, defendants filed their motion for summary judgment in quick succession after the admissions were due, without a courtesy warning communication to plaintiff of any kind.  Plaintiff's responses were due on August 14, 2008.  (Malaspina Decl., ¶ 4.) Defendants filed their summary judgment motion on August 25, 2008.  This strategy, along with their requests designed to force a surrender of plaintiff's case, will not be rewarded.  The deeming of all matters admitted, including ultimate responsibility, does not serve the merits of the action.  Therefore, only requests for admissions which eliminate factual issues will be further considered.

Rule 16(e)'s first and second prong favors defendants in regard to their valid requests for admissions (reprinted below).  This case is over two years old, and if the aforementioned valid admissions seeking resolution of factual matters are withdrawn, defendants will be put to the time and expense of pursuing discovery on these factual matters that should have been resolved by now, all the more problematic since discovery cutoff has already passed. *Cf*. 999 v. C.I.T Corp., 776 F.2d 866, 869 (9th Cir. 1985) (denying request to withdraw admissions during trial due to prejudice at this stage of case).   The merits of an action are not promoted by a failure of plaintiff to participate in legitimate discovery, and as indicated above, defendants will be prejudiced.

In addition, there is no "pro se unfairness" in deeming admitted the valid admissions.  The facts surrounding service of the requests for admissions favor defendants. Defense counsel personally served plaintiff with the requests for admissions at his deposition. (Malaspina Decl., ¶ 3.)  Defendants inserted a paragraph explaining to plaintiff when the responses were due and the consequences of failing to respond.  Plaintiff's statement that he does not recall receiving the envelope containing the requests at his deposition indicates a careful

choice of words in light of his litigation experience, and is not credible based on the fact of personal service of the RFAs. Although plaintiff claims he searched everywhere for the envelope, he could have taken other steps to obtain a copy of the requests if he could not find them, but he declined to do so. Additionally, plaintiff's excuse that he is proceeding pro se does not serve him well in light of his previous litigation history in this court. He has initiated over thirty actions in California, both in state and federal courts. Malaspina Decl., Ex. C. In another ADEA case filed in this court in 2006, plaintiff also failed to respond to requests for admissions and defendants' summary judgment motion on this basis was granted. Whitsitt v. Club Resource Group, Civ.S. 06-2075 MCE KJM PS. Although the court also found that even if the admissions were considered, plaintiff failed to meet his burden on the merits, the inference to be drawn is that plaintiff is entirely familiar with his duties in regard to requests for admissions and cannot use his pro se status as an excuse. Findings and Recommendations, filed August 25, 2008, at 4; Defs.' RJN, Ex. J.

Finally, plaintiff has been warned by this court that failure to comply with the local and federal rules is grounds for sanctions including dismissal, and he is presumed to have knowledge of these rules. Order, filed August 7, 2007, at 1-2. Withdrawal of the factual admissions at this stage of discovery would be prejudicial to defendants.

Requests numbered 1 through 5 will be deemed admitted as follows:

[1] Admit that you worked with Mark Tanner at Romic Environmental Technologies in East Palo Alto prior to applying for a position at Vinotheque Wine Cellars as alleged in your Complaint.
[2] Admit that Mark Tanner knew you were over 40 years old when he worked with you at Romic Environmental Technologies in East Palo Alto as alleged in your Complaint.
[3] Admit that Linda, an employee at Worknet, told you that she was not sure if Vinotheque Wine Cellars was interested in hiring anyone as alleged in your Complaint.
[4] Admit that Mark Tanner called you to interview for a position at Vinotheque Wine Cellars as alleged in your Complaint.
[5] Admit that you were not hired as an employee of Vinotheque Wine Cellars as alleged in your Complaint.

Defs'. Ex. B at 3.

B. Defendants' Motion for Summary Judgment (Merits)

As set forth below, the court finds that defendants' motion for summary judgment should be denied in part and granted in part after the deemed admissions outlined above are considered.

1. Age Discrimination in Hiring under the ADEA (Vinotheque Only)

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), and thus "the ADEA stands as a prohibition against unjustified maximum age limits for hiring," 14A C.J.S. Civil Rights § 272 (2007).

To establish a prima facie case of an ADEA violation, the plaintiff must show that he (1) belonged to a protected class [age 40 or older]; (2) was satisfactorily performing his job or was qualified for hire or promotion; (3) was terminated, rejected for employment, or otherwise subjected to an adverse employment action; and (4) was replaced by a substantially younger employee with equal or inferior qualifications. See Coleman v. Quaker Oats Co., Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000). The amount of evidence that must be produced to create a prima facie case is very little. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir.1991), superseded by statute on other grounds, see Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027 (9th Cir. 2005).

Once plaintiff has established a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." Chuang v. University of California Davis, Board of Trustees, 225 F.3d 1115, 1123-24 (9th Cir. 2000). See also Diaz v. Eagle Produce Limited Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008); Coleman, 232 F.3d at 1281. If this burden is satisfied, plaintiff

9

is required to show that the reason given is a pretext for the discriminatory action. Chuang, 225 F.3d at 1124. "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." Id. The rationale is that the issue of discrimination is more appropriately resolved by a factfinder on a complete record. Id.

As a preliminary matter, the court finds that for this claim there were two positions for which plaintiff applied: material cutter and finish cabinetry. (Pl.'s Ex. E at 4.) Vinotheque addresses only the position of cabinet assembler. (Schneider Decl., ¶ 2.) Vinotheque does not discuss whether there was another position open during this time period, whether plaintiff was considered for it, and if it was filled. Vinotheque does not mention a second position at all. Plaintiff's exhibits include a job listing detail for finish cabinetry position which appears to be dated May 31, 2006. Plaintiff states on the cover sheet to this exhibit that defendant had "some job openings" posted on this date, and that "it was still posted as of June 19th, 2006." (Pl.'s Oppo., Ex. F.) Although this job posting only advertises one job, plaintiff's verified complaint states that there were two positions and he applied for both of them. (Compl. at 1.) Plaintiff has also submitted his job application indicating that he applied for both the material cutter job and the finish cabinetry job. (Pl.'s Oppo., Ex.E at 4, 6.) Plaintiff's affidavit, which is attached to his opposition, states that "at the time I applied for the position at named employer defendant, there was 2 openings of wood cutter and cabinet finisher. The material cutter asked for 6 months experience. I was clearly qualified to do both jobs offered." (Id., Ex. Sum. Jud. A at 2.) Although defendant had the opportunity to do so through the declaration of Thomas Schneider, it failed to rebut plaintiff's prima facie case in regard to the second job opening by utterly failing to mention it. Therefore, defendant cannot receive summary judgment for the cutter position for the simple fact that defendants have not raised it as an issue to be decided. See Celotex, supra – moving party must identify why it believes there is no issue of material fact for the claim upon which summary judgment is sought.

Defendant Vinotheque concedes the first stage of the analysis to plaintiff by its statement that the court found plaintiff had established a prima facie case for age discrimination – referencing only the cabinetry assembly position. Def.'s Oppo. at 6:22-23; Reply at 8:28. Apparently, defendant does not wish to exercise its prerogative to contest this preliminary finding which was made at the screening stage of the case. See Defs.' RJN, Ex. I; Order, filed January 11, 2007, and the court agrees.

If defendant were to base its summary judgment motion on an alleged failure to make a prima facie case for the referenced position, the court would deny it. First, facts which are undisputed based on the admissions set forth above and which pertain to plaintiff's ADEA claim are that defendant knew plaintiff was over age 40 at the time he applied for a job with defendant, and plaintiff was not hired as an employee of defendant. (See RFAs # 2, 5.)

Plaintiff was qualified to be hired for either the cabinet finisher job or the cabinet cutter worker position.[3] His resume indicates he had six years of experience in the cabinet trade. Pl.'s Ex. E. The verified complaint confirms this experience. (Compl. at 3.) The complaint also states that of the two positions advertised, the cabinet finisher job sought at least two years experience ([sic] three years), and the cabinet cutter worker position sought six months experience. (Compl. at 4.) The declaration of Vinotheque's President and CEO states that plaintiff was interviewed for the position of cabinet assembler but, "Vinotheque did not hire Mr. Whitsitt because he had minimal qualifications and his skills were not well suited to the position." (Schneider Decl., ¶ 4.) Vinotheque does not dispute that plaintiff had six years of experience and this position required only two (or three) years of experience.

As to the fourth factor, the complaint alleges only that plaintiff "was told that someone else was hired for the positions." Compl. at 3. Vinotheque indicates it hired another

---

[3] The complaint describes these jobs as "finish cabinet maker and cutter and cabinet worker." (Compl. at 1.) The job listing describes the job requiring either three years experience or one year finish experience and a certificate, as "finish cabinetry." (Pl.'s Ex. F.) The only job referenced by defendant was that of "cabinet assembler." (Schneider Decl., ¶ 2.)

11

individual for the job of cabinet panel assembler, the same position for which plaintiff previously applied, on June 12, 2006. (Schneider Decl., ¶ 5.) As to this person's qualifications, Vinotheque states only that this candidate had previously worked for the company as a cabinet panel assembler, and had a good reputation when he previously separated. (Id.) Curiously, Schneider does not mention whether this person was substantially younger; however, at hearing defense counsel stated that he was 39 ½ years old. Therefore, defendant's argument that plaintiff submitted no admissible evidence that a substantially younger person was hired in his stead fails as defendant's evidence has helped to establish these facts.

Having found that all of the factors to establish a prima facie case have been met, the burden of production now shifts to defendant to show a legitimate, nondiscriminatory reason for its decision not to hire plaintiff for the assembler position. Here, defendant's President states that at the time of plaintiff's interview, "Vinotheque was not actively soliciting resumes from WorkNet as it was undecided as to whether to fill the cabinet assembler position based on the then-current business and economic climate." (Schneider Decl., ¶ 3.) In fact, defendant argues that the company decided not to fill the position (that it does address on summary judgment) until June, three months later. (Id. at ¶ 5.) Schneider further declares that the company's decision not to hire plaintiff had "absolutely nothing to do with Mr. Whitsitt's age." (Id. at ¶ 6.) Defendant also points out that defendant Tanner previously was acquainted with plaintiff from when they worked together at Romic Environmental, and he knew plaintiff was over 40 when he called him for an interview. RFA #1 [sic 2].

These asserted reasons, however, qualify as legitimate nondiscriminatory reasons for the decision not to hire plaintiff. It is up to plaintiff to now establish that these reasons are a pretext for unlawful discrimination. While this evidence is favorable to defendant company, it does not require disposition of the case in defendant's favor. Plaintiff has created a disputed issue of material fact in regard to pretext by his sworn statement that Mark Tanner told him at the end of his interview, "if you do not hear from me within the next 2 weeks then I will have hired a

younger person then you quickly stated I mean another person." [Sic]. (Compl. at 3:7-10.) The verified complaint further states that at the end of the interview, Tanner asked plaintiff how old he was, and Tanner recalled that plaintiff was in his mid-40s when he worked at Romic. (Id. at 3:2-5.)

Based on Ninth Circuit precedent which requires very little in the way of evidence at this stage of the proceedings, and these disputed material facts, summary judgment must be denied on plaintiff's ADEA claim in regard to both job openings.

2.  Intentional Infliction of Emotional Distress (Vinotheque and Tanner)

As the court recommends that this case proceed on plaintiff's federal claim, the court may exercise pendant jurisdiction over related state claims. 28 U.S.C. § 1367; United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966).

None of the requests for admissions remain deemed admitted in regard to this claim.

Plaintiff has failed to meet his burden in regard to his claim for intentional infliction of emotional distress based on the facts outlined above. In California, "'[t]he elements of a prima facie case for the tort of intentional infliction of emotional distress were summarized in Cervantez v. J.C. Penney Co. (1979) 24 Cal.3d 579, 593 [citation], as follows: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard [for] the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."' (Davidson v. City of Westminster (1982) 32 Cal.3d 197, 209.)" Miller v. National Broadcasting Co., 187 Cal. App. 3d 1463, 1487 (2nd Dist. 1986).

"[I]ntentional torts will support an award of damages for emotional distress alone, but only in cases involving extreme and outrageous intentional invasions of one's mental and emotional tranquility. . . .[i]t is the outrageous conduct that serves to insure that the plaintiff experienced serious mental suffering and convinces the courts of the validity of the claim."

Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 927 (1980) (citations and internal quotations omitted) (permitting action for negligent infliction of emotional distress; applying foreseeability of injury requirement and noting need for reasonable limitations).  However, "[b]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979), disapproved on other grounds, White v. ltramar, Inc.,21 Ca. 4th 563 (1999), citing Prosser, Law of Torts (4th ed. 1971) pp. 57-58.

      Plaintiff appears to rest his emotional distress claim both on his rejection by Vinotheque and Tanner's alleged statement, "If you do not hear from me within the next two weeks then I will have hired a younger person than you," which plaintiff concedes he initially took as a joke.  The complaint describes plaintiff's ensuing depression, sense of worthlessness, and fears for the future.[4]

      In the findings and recommendations on the motion to dismiss, the undersigned opined doubts about this claim in stating that "[n]ot every discrimination case can be equated with an intentional causing of emotional distress – conduct that must truly be outrageous and not just incorrect.  There is a danger in escalating every claim into one of the highest magnitude.  The court has some doubt about the level of conduct alleged here with respect to its outrageousness.  On the other hand, it would appear improper to dismiss such a claim at the motion to dismiss level."  Findings and Recommendations, filed November 20, 2007, at 12.

---

[4] The complaint provides, for example, that plaintiff's rejection by defendants conveyed the message, "Go off and die somewhere but Not here." Complaint, at p. 6.  Plaintiff states in part that, "My person is Hurt Injured and Damaged.  My pride has been destroyed.  My heart has been broken.  My spirit has been shaken, my will to live tested. . . . Does this mean over 50, I don't have the right to work anymore?  That hurt burns in my heart and it runs through my veins.  It has caused me irreparable Harm.  My Emotions have been utterly destroyed with feelings of being worthless.  I have trouble sleeping at night and I have nightmares of being stranded in life with no means of supporting my family and myself. . . ."  Id.

Now that the case has proceeded to the summary judgment level, plaintiff must come forward with evidence, and this he has failed to do. His opposition states summarily that "[defendants'] deliberate disregard for and indifference to my constitutional and civil rights establish a clear prima facie case for infliction of emotional distress." (Pl.'s Oppo. at 10.) Even if the lack of compliance with Rule 56(e) is disregarded, the exhibits attached to the opposition, as well as plaintiff's affidavit, are not relevant to this claim, and do not establish that plaintiff has experienced serious mental suffering. For example, plaintiff has submitted no medical evidence whatsoever to establish that his suffering was severe enough to seek psychological counseling of any kind, and he submitted no medical opinion regarding his mental state. While plaintiff's conclusions as to his distress, footnote 4, remain as part of plaintiff's evidence due to the status of a verified complaint, in light of the entire record at summary judgment, the court has reconsidered its prior, tenuous determination to allow the intentional infliction of emotional distress claim to remain in the case. First, plaintiff in no way creates an inference that the alleged statement was an intentional act on the part of defendant Tanner, and hence, both defendants, to intentionally inflict suffering on plaintiff. At best, given the deemed admission that Tanner knew how old plaintiff was *before* he called hin into an interview, the comment reflects a negligent or joking attitude on the part of Tanner which, although always dangerous to express in an interview situation, is not so loathsome that a reasonable jury could find that it constituted intentional infliction of emotional distress. At trial, a jury could not reasonably conclude on this evidence that "extreme and outrageous" conduct caused emotional distress to be intentionally inflicted upon plaintiff.

Therefore, summary judgment should be granted on this claim.

IV. CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's motion to withdraw admissions is granted in part and denied in part.

\\\\\

For the foregoing reasons, IT IS HEREBY RECOMMENDED that

1. Defendants' motion for summary judgment be granted in part and denied in part;

2. Judgment be entered for both defendants on plaintiff's claim of intentional infliction of emotional distress; and

3. Defendants' motion be denied in regard to plaintiff's claim for age discrimination under the ADEA, and that the case proceed on this claim only and against defendant Vinotheque only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/07/08

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:076/Whitsitt2076.sj.wpd